## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| GEDEON MBOKO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Docket No. 2:25-cv-00240-NT |
| | ) | |
| KEVIN JOYCE et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

Before me is Petitioner Gedeon Mboko's petition for a writ of habeas corpus
under 28 U.S.C. § 2241 (ECF No. 1). For the reasons below, the petition is **DENIED**.

## BACKGROUND[1]

### I.    Immigration History

Mr. Mboko is a 23-year-old citizen of the Democratic Republic of the Congo
("**DRC**"). He fled his home country in 2019 after experiencing severe abuse and
neglect by his parents and witnessing the deaths of two friends at the hands of police
during a political protest. He entered the United States alone at age 17 and was
placed in removal proceedings. In 2020, a California lawyer helped Mr. Mboko file an
asylum petition, still pending today, based on his fear of political violence in the DRC.

In 2021, Mr. Mboko moved to Maine and began receiving pro bono
representation from a legal services organization. The same pro bono immigration

---

[1]    As discussed below, I draw these facts from both parties' pleadings, certain exhibits submitted
by both parties, *see* ECF Nos. 9-5, 17-1–17-5, and both parties' assertions at the June 10, 2025 hearing.

attorney has represented him ever since. Mr. Mboko eventually filed an application for legal permanent residence, which is still pending. U.S. Citizenship and Immigration Services granted Mr. Mboko Special Immigrant Juvenile Status in 2022 and deferred action in 2023. An immigration judge terminated his removal proceedings in October of 2024.

## II.    November 2024 Arrest and Detention

On November 27, 2024, Mr. Mboko was arrested on state criminal charges and detained at the Cumberland County Jail ("**CCJ**") in Portland, Maine. Though his criminal matter was resolved on May 9, 2025, CCJ maintained custody of him under a U.S. Immigration and Customs Enforcement ("**ICE**") detainer. On May 12, 2025, an ICE official arrived at CCJ and told Mr. Mboko that removal proceedings were being initiated against him. Mr. Mboko saw his clothing contained in a bucket, as though they were ready to be transported, and he overheard an ICE official mention a plan to transfer Mr. Mboko to another state. He was taken to an ICE office where he was held handcuffed for five hours before he was returned to CCJ. On May 14, 2025, his deferred action was revoked.

## III.    Procedural History

On May 14, 2025, Mr. Mboko filed his present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Pet. for Writ of Habeas Corpus (ECF No. 1). He seeks an order preventing ICE from transferring him out of state and a declaration that doing so would violate his right to counsel under the Immigration and Nationality Act ("**INA**") and the Due Process Clause of the Fifth Amendment of the

U.S. Constitution.[2] He cites an official ICE policy that instructs officers not to transfer detainees who have an attorney of record or who have pending removal proceedings unless "necessary." Those policies provide in part:

> If a detainee has an attorney of record (Form G-28 on file), the sending field office will: . . . Notify the attorney that the detainee is being transferred and include the reason for the transfer and the name, location, and telephone number of the new facility as soon as practicable on the day of the transfer, but in no circumstances later than twenty four (24) hours after the transfer occurs.

U.S. ICE Enforcement, Policy No. 11022.1 ("**Detainee Transfers Policy**") § 5.3(2) (2012), available at https://www.ice.gov/doclib/detention-reform/pdf/hd-detainee-transfers.pdf; *see also id.* §§ 5.2(1)(b) & 5.3(1).

On May 14, 2025, I ordered the Government to show cause as to why I should not grant habeas relief. Order to Show Cause (ECF No. 3). On May 28, 2025, the Government[3] filed a response stating three grounds for dismissing Mr. Mboko's petition, two on jurisdictional grounds and one on the merits. Return and Resp. to Order to Show Cause in Opp'n to Pet. for Writ of Habeas Corpus ("**Resp.**") (ECF No. 9). Mr. Mboko filed a reply on June 5, 2025, which countered the Government's various arguments for dismissal and notified the Court of Mr. Mboko's upcoming

---

[2]    While the Sixth Amendment right to counsel does not apply to noncitizens in removal proceedings, the Immigration and Nationality Act ("**INA**") "provides this guarantee (along with other due process protections)," and Fifth Amendment due process also applies. *Garcia v. Sessions*, 856 F.3d 27, 51 n.25 (1st Cir. 2017) (Stahl, J., dissenting) (citing 8 U.S.C. § 1229(a)(1)(E)).

[3]    Mr. Mboko names four respondents in their official capacities: Kevin Joyce, Sheriff of Cumberland County Jail ("**CCJ**"); Patricia Hyde, Director of U.S. Immigration and Customs Enforcement's ("**ICE**") Boston field office; Kristi Noem, Secretary of the U.S. Department of Homeland Security; and Pamela Bondi, the U.S. Attorney General. The latter three respondents, whom I refer to throughout this order as "the Government," responded to my order to show cause. Respondent Joyce instead filed an answer (ECF No. 14).

asylum interview in Boston at the end of this month. Pet'r's Traverse in Supp. of Pet. for Writ of Habeas Corpus ("**Reply**") (ECF No. 17). After an evidentiary hearing held on June 10, 2025, I took the petition under advisement. To date, Mr. Mboko has not been transferred from CCJ.

## LEGAL STANDARD

The federal habeas statute authorizes district courts to grant writs of habeas corpus to individuals "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Mboko has been in ICE custody since May 12, 2025. "Petitions under § 2241 are not limited to individuals seeking release from custody or detention." *Singh v. Moniz*, No. 19-CV-12337-ADB, 2020 WL 13824549, at *3 (D. Mass. Feb. 5, 2020). "[T]he Supreme Court itself has pointed out" that "the writ was historically used in a wide variety of circumstances . . . ." *Devitri v. Cronen*, 289 F. Supp. 3d 287, 293 n.9 (D. Mass. 2018) (citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 301–03 (2001)).

Given the Government's three grounds for dismissal, I construe its response as a motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[4] Because I do not reach the merits, I set forth only the Rule 12(b)(1) standard.

My approach to a Rule 12(b)(1) motion depends on whether the party challenging jurisdiction "controvert[s] the accuracy (rather than the sufficiency) of

---

[4]     *Cf. Singh v. Moniz*, No. 19-CV-12337-ADB, 2020 WL 13824549, at *3 (D. Mass. Feb. 5, 2020) (construing the government's arguments for dismissing a habeas petition as Rule 12(b)(1) and 12(b)(6) motions); *Denbow v. Me. Dep't of Corr.*, No. 1:20-CV-00175-JAW, 2020 WL 4736462, at *1 (D. Me. Aug. 14, 2020) ("A motion to dismiss a habeas petition is reviewed under the same standard as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6).") (quotations and citations omitted).

the jurisdictional facts." *Bigda v. City of Springfield*, No. CV 23-30067-MGM, 2024 WL 1886103, at \*3 (D. Mass. Apr. 29, 2024). If the accuracy of jurisdictional facts is questioned, the assertions of the party invoking this Court's jurisdiction "are entitled to no presumptive weight," and I "must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Id.* (quoting *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)). In conducting this inquiry, I have " 'broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings . . . .' " *Id.* (quoting *Valentin*, 254 F.3d at 364); *see also Groden v. N&D Transp. Co., Inc.*, 866 F.3d 22, 25 n.3 (1st Cir. 2017) ("When considering motions to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may consider materials outside the pleadings.").

Here, the parties dispute the accuracy of relevant jurisdiction facts—namely, whether Mr. Mboko faces the imminent risk of being transferred out of state. Accordingly, I evaluate jurisdiction based on the pleadings, several exhibits submitted by the parties,[5] and statements by the parties at the June 10, 2025 evidentiary hearing.

---

[5]    I rely on the ICE officer's declaration submitted by the Government (ECF No. 9-5) and the five declarations submitted by Mr. Mboko (ECF Nos. 17-1–17-5). I also rely on assertions and arguments made by both parties at the June 10, 2025 hearing. At that hearing, the Government objected to portions of several of Mr. Mboko's exhibits on hearsay grounds. I admitted those exhibits conditionally and reserved ruling. I now hold that the relevant exhibits (ECF Nos. 17-1–17-5) are ADMITTED. In this order, I rely only on portions of those exhibits that do not pose hearsay issues. *See infra* n.9.

## DISCUSSION

The Government makes three arguments for dismissing Mr. Mboko's statutory
and constitutional claims: (1) there is no subject matter jurisdiction because the
claims are unripe; (2) there is no subject matter jurisdiction because the INA bars
district courts from reviewing claims "arising from" removal proceedings; and (3) the
claims fail on the merits. *See* Resp. 2. Because I find I lack jurisdiction based on
ripeness, I do not reach the question of INA jurisdiction[6] or the merits of Mr. Mboko's
claims. *See Am. Ass'n of Univ. Professors v. Rubio*, No. 25-10685-WGY, 2025 WL
1235084, at *6 (D. Mass. Apr. 29, 2025) (" 'When faced with motions to dismiss under
both 12(b)(1) and 12(b)(6), a district court . . . should ordinarily decide the 12(b)(1)

---

[6]     The Government contends that Mr. Mboko's right-to-counsel claims are unambiguously barred
by two provisions of the INA. *See* Return and Resp. to Order to Show Cause in Opp'n to Pet. for Writ
of Habeas Corpus ("**Resp.**") 5–7 (ECF No. 9) (citing 8 U.S.C. § 1252(b)(9) (stripping district courts of
jurisdiction over claims "arising from" removal proceedings) and § 1252(a)(5) (channeling removal-
related claims through the administrative process with review vested exclusively in the appropriate
appellate court)). The Government relies on *Aguilar v. U.S. Immigration & Customs Enforcement
Division of Department of Homeland Security*, 510 F.3d 1 (1st Cir. 2007), which held that Section
1252(b)(9) barred district court review of immigrant detainees' right-to-counsel claims. Since *Aguilar*,
the Supreme Court decided *Jennings v. Rodriguez*, 583 U.S. 281 (2018), a pluralilty opinion that casts
doubt on Section 1252(b)(9)'s application to claims brought *before* a removal order exists. The First
Circuit has not addressed that question since *Jennings*. The Government contends that *Aguilar*
remains good law because the First Circuit discussed it in *Gicharu v. Carr*, 983 F.3d 13 (1st Cir. 2020).
But *Gicharu* is of limited use here because it involved a petitioner who was contesting a final removal
order.
        While I do not reach the question of whether Mr. Mboko's claims "aris[e] from" removal
proceedings, I note that the answer to that question is less straightforward than the Government
suggests, as various courts and scholars have observed. *See, e.g.*, *S. Poverty L. Ctr. v. U.S. Dep't of
Homeland Sec.*, No. 18-760, 2020 WL 3265533, at *35 n.4 (D.D.C. June 17, 2020) ("The question of
whether the Court would have jurisdiction over Plaintiff's access to counsel claim is a complicated one
and the authorities are equipoise."); Adam J. Garnick, *Noncitizens' Access to Federal District Courts:
The Narrowing of § 1252(b)(9) Post-*Jennings, 169 U. Pa. L. Rev. 783, 835 n.334 (2021) ("Right-to-
counsel claims present perhaps the most complicated—or, at least, divisive—questions about the scope
of § 1252(b)(9)."); Natasha Phillips, *Keeping Counsel: Challenging Immigration Detention Transfers as
a Violation of the Right to Retained Counsel*, 27 Mich. J. Race & L. 375, 405 (2022) ("[B]ecause the
harm to the attorney-client relationship cannot be remedied alongside a final order of removal . . . ,
jurisdiction over right to counsel transfer claims is consistent with section 1252.").

motion first.' " (quoting *Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 456 (D. Mass. 2011), *aff'd*, 672 F.3d 64 (1st Cir. 2012)).

## I.    Ripeness Doctrine

Ripeness doctrine is grounded in Article III's "foundational" principle that " 'an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation.' " *Bigda*, 2024 WL 1886103, at *4 (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020)). The inquiry is "whether an injury that has not yet happened is sufficiently likely to happen to warrant judicial review." *Smith v. Aroostook Cnty.*, 376 F. Supp. 3d 146, 155 (D. Me.), *aff'd*, 922 F.3d 41 (1st Cir. 2019) (citation omitted).

In the First Circuit, ripeness depends on: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 8 (1st Cir. 2012) (citation omitted). Fitness asks "whether allowing more time for development of events would 'significantly advance [the court's] ability to deal with the legal issues presented or aid' " the court's resolution. *Doe v. Bush*, 323 F.3d 133, 138 (1st Cir. 2003) (quoting *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 82 (1978)). Fitness turns on " 'finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed.' " *N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 53 (1st Cir. 2021) (citation omitted). Hardship asks "whether the challenged action creates a direct and immediate dilemma for the parties." *Id.* (citation omitted). Hardship also considers "the judgment's usefulness" and whether the requested relief "would be of practical

7

assistance" in resolving the underlying matter. *Verizon New England, Inc. v. Int'l Brotherhood of Elec. Workers, Local No. 2322*, 651 F.3d 176, 188 (1st Cir. 2011) (citations omitted).

## II. Assessment

On the record before me, I find that Mr. Mboko has not established ripeness. Though Mr. Mboko makes a persuasive case for hardship,[7] he fails to satisfy the fitness prong.

Mr. Mboko says he faces an "immediate" and "imminent" risk of transfer to a remote detention facility because: (1) on May 14, 2025, he overheard an ICE officer say that Mr. Mboko was being "moved to another facility outside of Maine;"[8] (2) he saw his clothes "placed in a bucket," as though "ready to be transported"; and (3) he has seen "many other immigrant detainees removed from [CCJ] without any prior notice." Reply 1, 6–7; Decl. of Pet'r Gedeon Mboko ¶¶ 11–12, 16–17 (ECF No. 17-4).

---

[7] As to hardship, Mr. Mboko argues that a transfer out of Maine would "severely hinder, if not sever, [his] access to counsel and disrupt ongoing legal work." Pet'r's Traverse in Supp. of Pet. for Writ of Habeas Corpus ("**Reply**") 7 (ECF No. 17). He explains that his current attorney would be unable to meet with him in person given her organization's limited resources. He also establishes that the quality of his representation would suffer if he could communicate with his attorney only by phone or video, especially given his language skills and a speech stutter disorder that worsens when discussing sensitive topics. *See* Decl. of Att'y Margaret Loefellholz ¶ 21 (ECF No. 17-5); *cf. Palamaryuk by & through Palamaryuk v. Duke*, 306 F. Supp. 3d 1294, 1304 (W.D. Wash. 2018) (denying motion to dismiss a due process claim concerning an imminent ICE transfer where the petitioner's disability "necessitate[d] in-person meetings" with his lawyer). Finally, he says he is already suffering from the uncertainty of a transfer that might occur at any moment. Reply 7; *cf. D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-cv-10676-BEM, 2025 WL 1142968, at *21 n.44 (finding due process claims ripe where ICE detainees faced "the harm of substantial uncertainty" if the court delayed resolving their claims) (quotations and citation omitted).

[8] The Government contends that because Mr. Mboko's native language is Lingala, there is cause to doubt what he asserts he overheard while in ICE custody. Resp. 11 n.5. Mr. Mboko has clarified that while he requires English language interpretation for court proceedings, he speaks and understands English. Reply 2 n.3.

Mr. Mboko also submits sworn affidavits from three Maine-based immigration attorneys who attest to personal, specific, and recent incidents of ICE transferring detained clients out of Maine without prior notice to their counsel, in direct violation of agency policy.[9]

The Government counters that it has never planned and does not currently plan to transfer Mr. Mboko at all. It provides an ICE employee's sworn statement that, as of May 28, 2025, ICE "ha[d] no intention of transferring" Mr. Mboko (though it reserves the right to do so for "operational" reasons). *See* Decl. of Assistant Field Office Director Keith M. Chan ¶ 19 (ECF No. 9-5). At the June 10, 2025 hearing, Government counsel reiterated that ICE has no plan to transfer Mr. Mboko and stated that any "operational" need to transfer Mr. Mboko would be constrained by ICE's written policies. *See* Detainee Transfers Policy § 5.2(3) (specifying when ICE may determine it necessary to transfer a represented detainee out of the geographic area) and § 5.3 (requiring attorney notification in the event of a detainee transfer).

Because the Government asserts it never intended to transfer Mr. Mboko and does not currently plan to do so, Mr. Mboko's claims are not fit for judicial review. *See Doe*, 323 F.3d at 138 ("[B]y waiting until a case is fully developed . . . , courts benefit from a focus sharpened by particular facts.") (citations omitted).

---

[9]    *See, e.g.*, Decl. of Briana S. Zhuang, Esq. ¶¶ 22–23 (ECF No. 17-1) (asserting that ICE routinely transfers detainees from Maine to detention centers in other states "very suddenly, without notice to the detainees themselves, their families, or their attorneys"); Aff. of Kathleen Maloney, Esq. ¶¶ 10–16 (ECF No. 17-2) (describing how, in 2025, a client was transferred, without prior notice to counsel of record, from Massachusetts to Texas days before a scheduled bond hearing); Aff. of Emily Massell, Esq. ¶ 3 (ECF No. 17-3) (describing a February 2025 incident in which a client was transferred from ice to a detention center in rural New Mexico without notice or opportunity to seek judicial review).

I emphasize that I am relying on the Government's representations to reach this conclusion. *Cf. Muntasser v. Napolitano*, No. 04-11259-RWZ, 2009 WL 10728822, at *3 (D. Mass. Feb. 10, 2009) (finding the petitioner's claims unripe largely because the court "accept[ed] the Government's representation that it [did] not presently intend to commence removal proceedings"). If ICE forms a plan to transfer Mr. Mboko out of Maine, I expect ICE to follow its own policies—as the Government assures me it will—including notice to Mr. Mboko's counsel. Should the risk of transfer become concrete or should ICE transfer Mr. Mboko despite the Government's assurances to the contrary, Mr. Mboko is free to return to this Court to seek appropriate relief. *Cf. Öztürk v. Hyde*, 136 F.4th 382, 403–04 (2d Cir. 2025) (ordering the government to comply with the district court's order requiring ICE to physically transfer the petitioner from Louisiana to Vermont).[10]

## CONCLUSION

For the reasons set forth above, the relief requested in Mr. Mboko's habeas petition (ECF No. 1) is **DENIED**. His petition is dismissed without prejudice.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 17th day of June, 2025.

---

[10]    *See also Öztürk v. Hyde*, 136 F.4th 382, 403 (2d Cir. 2025) (concluding with "little difficulty" that "the government's unspecific financial and administrative concerns" about transferring the petitioner from Louisiana to Vermont were "decidedly" outweighed by the risk of substantial constitutional harm to the petitioner if not transferred) (quotations and citation omitted).